## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JUDD SHAW, P.A. and JUDD B. SHAW, ESQ.,** | **Case No.: 3:19-cv-12237-FLW-LHG** |
| **Plaintiffs,** | |
| **v.** | **CIVIL ACTION** |
| **DAVID P. KREIZER, ESQ., AMANDA IBRAHIM, ESQ., EVAN MARX, ESQ., MARY CARROLL SANTORELLI, JOSH EDELSTEIN, DIANA NAVARRETE, ABIGAIL RIOS, KRISTEN FONE, DAVID P. KREIZER, LLC doing business as KREIZER LAW; and, JOHN DOES 1-10 (said names being fictitious)** | **MOTION RETURNABLE: AUGUST 5, 2019** |
| | **ORAL ARGUMENT REQUESTED** |
| **Defendants.** | |

---

### BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIM BY DEFENDANTS DAVID P. KREIZER and DAVID P. KREIZER, LLC

---

Jay R. McDaniel, Esq.,
Weiner Law Group LLP
629 Parsippany Road, P.O. Box 438
Parsippany, N.J. 07054-0438
Phone: (973) 403-1100
Attorneys for Plaintiffs,
Judd Shaw, P.A. and Judd B. Shaw, Esq.

On the Brief:
    Jay R. McDaniel, Esq., Attorney ID # 011481992
    Donald A. Klein, Esq., Attorney ID #281791972
    Andrew J. Kyreakakis, Esq., Attorney ID# 025751978

# **TABLE OF CONTENTS**

Page

TABLE OF CONTENTS..................................................................i

TABLE OF AUTHORITIES ........................................................ iii

PRELIMINARY STATEMENT .....................................................1

PROCEDURAL HISTORY............................................................4

ARGUMENT ................................................................................6

POINT I.......................................................................................6

IN DECIDING A MOTION TO DISMISS, THE COURT MAY CONSIDER DOCUMENTS REFERENCED THEREIN OR INTEGRAL THERETO. ...................................................................................6

POINT II....................................................................................11

DEFENDANTS' COUNTERCLAIM SHOULD BE DISMISSED, PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6), FOR FAILURE TO STATE A CLAIM. ..............................................11

DEFENDANTS' BREACH OF CONTRACT CLAIM IS INSUFFICIENT AS A MATTER OF LAW. ...........................................................13

    A.   Elements of, and Defenses to, Defendants' Breach of Contract Claim ....................................................................................14

        1.   Elements of the Breach of Contract Claim ...................15

        2.   Defenses to the Breach of Contract Claim....................21

    B.   Bare Legal Conclusions ........................................................25

    C.   Plausibility............................................................................27

POINT IV .................................................................................................30

KREIZER'S BREACH OF GOOD FAITH AND FAIR DEALING CLAIM
IS DUPLICATIVE OF HIS BREACH OF CONTRACT CLAIM AND
SHOULD BE DISMISSED. ......................................................................30

POINT V ..................................................................................................32

KREIZER'S BREACH OF FIDUCIARY DUTY CLAIM IS
DUPLICATIVE OF HIS BREACH OF CONTRACT CLAIM AND
SHOULD BE DISMISSED. ......................................................................32

POINT VI.................................................................................................34

KREIZER'S TORTIOUS INTERFERENCE CLAIM IS INSUFFICIENT
AS A MATTER OF LAW. ........................................................................34

POINT VII ...............................................................................................36

KREIZER'S UNFAIR COMPETITION CLAIM IS INSUFFICIENT AS A
MATTER OF LAW. ..................................................................................36

POINT VIII ..............................................................................................36

KREIZER'S EQUITY INTEREST CLAIM IS SUBSUMED BY THEIR
BREACH OF CONTRACT CLAIM AND SHOULD BE DISMISSED. ..............36

POINT IX.................................................................................................37

KREIZER'S CHARGING LIEN CLAIM IS INSUFFICIENT AS A
MATTER OF LAW. ..................................................................................37

POINT X ..................................................................................................38

KREIZER'S ACCOUNTING CLAIM IS SUBSUMED BY HIS BREACH
OF CONTRACT CLAIM AND  SHOULD BE DISMISSED................................38

CONCLUSION .........................................................................................39

# TABLE OF AUTHORITIES

Page

**Cases**

American Cyanamid Co. v. Ellis-Foster Co.,
  298 F.2d 244 (3d Cir. 1962) ................................................................19

Ames v. Am. Radio Relay League, Inc.,
  716 Fed. Appx. 115 (3d Cir. 2017) .....................................................21

Arango v. ReconTrust Co., N.A.,
  2010 U.S. Dist. LEXIS 58314 (S.D. Cal. June 14, 2010) ...................38

Ashcroft v. Iqbal,
  556 U.S. 662 (2010) ..................................................................... 11, 12

Asmodus, Inc. v. Junbiao Ou,
  2017 U.S. Dist. LEXIS 183613 (C.D. Calif. June 20,
  2017) 298 F.2d 244 (3d Cir. 1962).....................................................18

Atlantis Info. Tech. v. CA, Inc.,
  485 F.Supp.2d 224 (E.D.N.Y. 2007).....................................................33

Bainhauer v. Manoukian,
  215 N.J. Super. 9 (App. Div. 1987).......................................................35

Ball v. Famiglio,
  726 F.3d 448, 459 n.16 (3d Cir. 2013), cert. denied,
  134 S.Ct. 1547 (2014) .........................................................................21

Barrison v. D'Amato & Lynch, LLP,
  2019 N.Y. Slip Op 30905(U) (Sup. Ct. N.Y. County) .................. 28, 29

Bask McDonough Hotel, LLC v. American Hotel Dev.
  Partners, LLC,
  2012 U.S. Dist. LEXIS 120566 (N.D. Ga. 2012)..................................18

Baxt v. Liloia,
  155 N.J. 190 (1998) ..............................................................................35

Bell Atlantic Corp. v. Twombly,
  550 U.S. 544 (2007) ..................................................................... 11, 13

Betz v. Temple Health Sys.,
659 Fed. Appx. 137 (3d Cir 2016) ........................................................................11

Borteck v. Torzewski,
2017 N.J. Super. Unpub. LEXIS 2441 (App. Div. Sept. 25, 2017) ....................28

Bressman v. J&J Specialized, LLC,
2013 N.J. Super. Unpub. LEXIS 2890 (App. Div. Dec. 6, 2013)........................17

Buck v. Hampton Twp. Sch. Dist.,
452 F.3d 256 (3d Cir. 2006) ................................................................................7

Chemtech Int'l, Inc. v. Chemical Injection Techs., Inc.,
2007 U.S. App. LEXIS 21697 (3d Cir. Sept. 10, 2007)......................................19

Chester v. Boston Sci. Corp.,
2017 U.S. Dist. LEXIS 26676 (D.N.J. Feb. 27, 2017).......................................14

Chicago Police Sgts. Assn. v. City of Chicago,
2011 U.S. Dist. LEXIS 72424 (N.D. Ill. July 6, 2011) .......................................13

City of Gloucester City v. Beazer Homes Corp.,
2014 N.J. Super. Unpub. LEXIS 126 at (App. Div. Jan. 23, 2014) .............. 13, 19

Cohen v. Duane, Morris & Heckscher,
1991 U.S. Dist. LEXIS 18287 (E.D. Pa. Dec. 13, 1991) ...................................22

County of Morris v. Fauver,
153 N.J. 80 (1998) ...................................................................................... 22, 25

Coyle v. Englander's,
199 N.J. Super. 212 (App.Div.1985).................................................................15

Custom Communications Engineering, Inc. v. E.F. Johnson Co.,
269 N.J. Super. 532, 541 (App. Div. 1993).................................................. 34, 38

D'Esposito v. Gusrae, Kaplan & Bruno PLLC,
844 N.Y.S.2d 214 (App. Div. 2007) ............................................................ 28, 29

Dorchester Manor v. Borough of New Milford,
287 N.J. Super. 163, 170-71 (Law Div. 1994), aff'd,
287 N.J. Super. 1154 (App. Div. 1996)........................................................ 22, 25

Dorley v. S. Fayette Twp. Sch. Dist.,
   129 F.Supp.3d 220 (W.D. Pa. 2015) ....................................................13

Dressler v. Lime Energy,
   2015 U.S. Dist. LEXIS 106532 (D.N.J. Aug. 13, 2015) ......................12

Duff v. Trenton Beverage Co.,
   4 N.J. 595 (1950) ................................................................................19

Eastman Chem. Co. v. Nestle Waters Mgmt. & Tech.,
   2012 U.S. Dist. LEXIS 141281 (S.D.N.Y. Sept. 28, 2012) .................23

Ellington Credit Fund, Ltd. V. Select Portfolio Servicing, Inc.,
   837 F.Supp.2d 162 (S.D.N.Y. 2011) ...................................................20

Evvco Leasing Corp. v. Ace Trucking Co.,
   828 F.2d 188, 195 (3d Cir. 1987) ........................................................24

Fields v. Thompson Printing Co.,
   363 F.3d 259 (3d Cir. 2004) ................................................................32

Fowler v. UPMC Shadyside,
   578 F.3d 203 (3rd Cir. 2009) ...............................................................12

Glenfed Financial Corp., Commercial Finance Div. v. Penick Corp.,
   276 N.J. Super. 163 (App. Div. 1994) ..................................................32

Globe Motor Co. v. Igdalev,
   225 N.J. 469 (2016) .............................................................................15

Great Western Mining & Mineral Co. v. ADR Options, Inc.,
   882 F. Supp. 2d 749 (D.N.J. 2012) ..................................................8, 11

Guerrero v. Bensalem Racing Ass'n,
   25 F.Supp.3d 573 (E.D.Pa. 2014) ........................................................21

Hahn v. OnBoard LLC,
   2009 U.S. Dist. LEXIS 107606 (D.N.J. Nov. 16, 2009) ................ 31, 32

Heim v. Shore,
   56 N.J. Super. 62 (App. Div. 1959) ......................................................18

Horner v. Bagnell,
  154 A.3d 975 (Conn. 2017).....................................................................37

In re Burlington Coat Factory Sec. Litig.,
  114 F.3d 1410 (3d Cir. N.J. 1997) (emphasis added) ...........................7

In re Evans,
  51 B.R. 404 (Bankr. S.D. Ohio 1985) ..................................................20

In re Hijacking of Pan Am,
  698 F. Supp. 479 (S.D.N.Y. 1988)........................................................37

In re Riddell Concussion Reduction Litig.,
  77 F.Supp.3d 422 (D.N.J. 2015)...........................................................13

Jackson v. N'Genuity Enters.,
  2010 U.S. Dist. LEXIS 78134 (N.D. Ill. Aug. 2, 2010).......................38

Kaufhold v. Caiafa,
  872 F.Supp.2d 374 (2012).....................................................................24

Kost v. Kozakiewicz,
  1 F.3d 176 (3d Cir. 1993).....................................................................11

Lavin v. Board of Educ.,
  90 N.J. 145 (1982)................................................................................25

Lobiondo v. Schwartz,
  323 N.J. Super. 391 certif. denied, 162 N.J. 488 (1999)......................34

Marrin v. Capital Health Sys.,
  2015 U.S. Dist. LEXIS 10243 (D.N.J. Jan. 29, 2015) ............................. 7, 13, 27

Martin v. Martin,
  327 S.W.3d 741 (Tex. Ct. App. 2010) ......................................... 18, 19

Napoleon v. Colicchio,
  2013 N.J. Super. Unpub. LEXIS 2227 (Law Div. September 6, 2013)........ 33, 34

Nat'l Auto Div., LLC v. Collector's Alliance, Inc.,
  2017 N.J. Super. Unpub. LEXIS 234 (App. Div. January 31, 2017)..................36

Page v. Muze, Inc.,
   270 A.D.2d 401 (2d Dep't 2000) ......................................................................37

Phillips v. County of Allegheny,
   515 F.3d 224 (3rd Cir. 2008)............................................................................11

Santiago v. Warminster Twp.,
   629 F.3d 121 (3d Cir. 2010) .............................................................................11

TBI Unlimited, LLC v. Clear Cut Lawn Decisions, LLC,
   2013 U.S. Dist. LEXIS 162025 (D.N.J. Nov. 14, 2013)...................................31

Wade v. Kessler Inst.,
   172 N.J. 327 (N.J. 2002)...................................................................................32

Weichert Co. Realtors v. Ryan,
   128 N.J. 427, 435 (1992) ..................................................................................17

West Jersey Title & Guar. Co. v. Industrial Trust Co.,
   27 N.J. 144 (1958) ............................................................................................24

**Statutes**

26 U.S.C. 83(a) ........................................................................................................24

N.J.S.A. 14A:12-3 ....................................................................................................16

N.J.S.A. 14A-17-1 *et seq.* ........................................................................................16

N.J.S.A. 42:1A-10(b) ...............................................................................................16

N.J.S.A. 42:1A-39(a) ...............................................................................................16

**Rules**

Fed. R. Civ. P. 11 .....................................................................................................20

Fed. R. Civ. P. 12(b)(6)..............................................................................................1

Fed. R. Civ. P. 9 .......................................................................................................19

Fed. R. Civ. P. 9(c)...................................................................................................20

**Other Authorities**

2 Moore's Federal Practice – Civil §9.04[1] ..........................................................20

2 Moore's Federal Practice – Civil §9.04[3] ..........................................................20

Douglas R. Richmond, The Partnership Paradigm and
   Law Firm Non-Equity Partners,
   58 Kansas L. Rev. 507 (2010)...............................................................................28

1 Williston on Contracts §4.29 (2007) ..................................................................17

## <u>PRELIMINARY STATEMENT</u>

Plaintiffs, Judd Shaw, P.A. and Judd B. Shaw, Esq., move pursuant to <u>Fed. R. Civ. P.</u> 12(b)(6) to dismiss the Counterclaim of David P. Kreizer and David P. Kreizer LLC (collectively "Kreizer") for failure to state a claim. Plaintiffs filed this action in late April 2019 in state court seeking, *inter alia*, to enjoin defendants (a former non-equity partner, associate attorneys, and para-professional staff) from further unlawful conduct after they misappropriated the firm's personal injury case management database and client list, staged a mass walkout at the close of business before a holiday weekend, and engaged in a coordinated solicitation of the firm's clients by e-mail, text, and telephone. These tactics, largely admitted by defendant David Kreizer, resulted in the loss of hundreds of client matters.

Defendants removed to federal court,[1] and now assert in a Counterclaim claims for breach of contract, breach of the duty of good faith and fair dealing, breach of fiduciary duty, tortious interference, unfair competition, the fair value of Kreizer's equity interest, the imposition of a charging lien, and an accounting.

The Counterclaim alleges a "partnership" under a document executed by Kreizer and Shaw, entitled "Summary of Proposed Terms for David P. Kreizer's

---

[1] Federal causes of action are asserted under the Defend Trade Secrets Act and the Computer Fraud and Abuse Act.

Admission as a Principal to Judd B. Shaw, P.A." (the "Proposed Terms") dated March 15, 2015. Defendants did not, however, supply the document, which on its face describes the terms for Kreizer's proposed future admission as a principal of an existing corporation -- an event that neither party pursued over the ensuing four years.  The Counterclaim relies on a conclusory and selective summary of some, but not all, of the Proposed Terms and does not lay out a plausible claim for the existence or breach of a partnership contract. On the contrary, the plausible scenario evident from the pleadings and key documents integral to the Counterclaim is simply that Kreizer, a well-compensated employee of a corporation, resigned during negotiations over his admission as a principal. Kreizer alleges nothing to indicate that he was ever issued shares in the corporation, or even sought to be issued shares. Examined in its entirety, the partnership "contract" alleged by Kreizer is an agreement to admit Kreizer as a shareholder in the future, but it lacks essential terms necessary to transform the proposed terms to form a binding contract.

A full examination of the pleadings and integral documents reveals that in the four years between March 2015 and March 2019, neither Kreizer nor Shaw did anything further to implement the Proposed Terms or to issue shares to Kreizer. Kreizer enjoyed a lucrative compensation package associated with his status as non-equity employee partner, but did not share profits or exercise ownership of the

business. Thus, not only does Kreizer fail to allege the existence of an enforceable agreement, his claim is subject to a series of defenses, including abandonment, waiver, and laches.

First, the breach of contract claim is deficient on its face because it fails to plead the elements of such a claim, namely the existence of a binding contract and satisfaction of the conditions precedent to its enforcement (*i.e.*, that defendant Kreizer received and paid for his shares and that the parties had actually executed the shareholder agreement as anticipated). Further, defenses -- abandonment, waiver, and laches -- appear on the face of the Counterclaim, when read not in isolation but in concert with documents referenced therein or integral thereto.

Second, the Counterclaim is replete with legal conclusions that are unsupported by the factual allegations in the Counterclaim and/or contradicted by documents referenced in or integral thereto. For example, the Counterclaim alleges that Shaw Kreizer was a partnership and that he was one of "two attorneys in the Firm who received **partnership** distributions (emphasis provided)"--when, in fact, Kreizer received bonus income reported on Form 1099 in 2015, 2016, 2017, and 2018 (which were not attached to the Counterclaim).  He was not paid as a partner.

Third, the Counterclaim is based on a string of implausible allegations, including that Kreizer and Shaw organized Shaw Kreizer PA as a "partnership" in March 2015; that Kreizer was an equity partner in that partnership; and that in a

March 31, 2019 memorandum to Shaw, Kreizer was seeking to enforce the 2015 "agreement" when, in fact, the memorandum (which was not attached to the Counterclaim) was called "Talking Points" and requested that the parties discuss the details, including sharing profits, of Kreizer's his admission as equity shareholder.

## PROCEDURAL HISTORY[2]

Plaintiffs commenced this action in state court on April 23, 2019 by Order to Show Cause and Verified Complaint (Dkt. No. 1-1) seeking preliminary injunctive and other relief. The Complaint asserted claims for violation of the New Jersey Trade Secret Act, unlawful "hacking" under New Jersey's Computer Crime Law, common law misappropriation, conversion, breach of the duty of loyalty, breach of fiduciary duty, tortious interference with contractual relations and with prospective economic relations, civil conspiracy, breach of contract, breach of the covenant of good faith and fair dealing, unfair competition, unjust enrichment, fraud, and declaratory judgment. (Id.)

By Order dated April 25, 2019, the state court set a preliminary injunction hearing for July 29, 2019, and, on consent of the parties, ordered expedited discovery and provided for the parties to make joint notice to the clients of

---

[2] "Dkt." references herein are to the federal Court docket in this matter.

Kreizer's departure. (Dkt. No. 2). In direct breach of that consent order, defendants have continued to solicit plaintiffs' clients.

Plaintiffs amended their Verified Complaint on May 7, 2019 to include causes of action under federal law. (Dkt. No. 1-2). Defendants removed to this Court on the same day. (Dkt. No. 1). On June 3, 2019, defendants filed an unverified Answer to plaintiffs' Amended Verified Complaint, and Kreizer filed an unverified Counterclaim against plaintiffs. (Dkt. No. 7).[3]

### The Allegations of the Kreizer Counterclaim

The Counterclaim alleges that under the "explicit terms of a written agreement", Shaw "formed a partnership with Kreizer to operate Shaw Kreizer, PA … in March 2015" (¶1) and that "[o]n March 15, 2015, Kreizer and Shaw formed Shaw Kreizer, P.A., a partnership for the practice of law." (¶14). According to the Counterclaim, the "terms of the partnership were memorialized in a contract that Shaw drafted." (¶15). Kreizer alleges that he resigned from the "partnership" on April 19, 2019 (¶5) and identifies plaintiff, Judd B. Shaw P.A., on information and belief, as "a law firm to which Shaw has transferred assets belonging to Shaw Kreizer" (¶ 11).

Kreizer selectively summarizes various provisions of the alleged agreement, but does <u>not</u> provide a copy. He provides only conclusory summaries such as that

"as consideration to form Shaw Kreizer," Shaw promised that "Kreizer's share of the Firm's equity would increase from 1% to 50% over the next two years."  He further contends that he and Shaw each received "partnership distributions."

The Counterclaim asserts a claim for breach of contract (First Count), arising out of the alleged failure to issue "shares" for a one percent interest on March 16, 2015, and the alleged failure to issue the remaining "49 percent of the equity of the firm" within 60 days of March 17, 2017.  In addition to the breach of contract claim, Kreizer alleges derivative causes of action for breach of the duty of good faith and fair dealing (Second Count), breach of fiduciary duty (Third Count), tortious interference (Fourth Count), unfair competition (Fifth Count), the fair value of Kreizer's equity interest (Sixth Count), the imposition of a charging lien on both PIP and personal injury cases that have remained with plaintiff's firm (Seventh Count), and an accounting (Eighth Count).

## **ARGUMENT**

## **POINT I**

## **IN DECIDING A MOTION TO DISMISS, THE COURT MAY CONSIDER DOCUMENTS REFERENCED THEREIN OR INTEGRAL THERETO.**

Kreizer's Counterclaim fails when properly considered in light of the Proposed Terms and other integral documents that he failed to include in his

---

[3] A copy of the Counterclaim is attached to the accompanying Declaration of Judd B. Shaw ("Shaw Decl.") as Exhibit A.

pleading. A district court may in ruling on a motion to dismiss consider "a 'document integral to or explicitly relied upon in the complaint' -- 'without converting the motion into one for summary judgment.'"

> [W]hat is critical is whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited. **Plaintiffs cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them.**

In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. N.J. 1997) (emphasis added; citation omitted). *See also* Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint, and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.").

This Court specifically addressed the issue in Marrin v. Capital Health Sys., 2015 U.S. Dist. LEXIS 10243 at *8-9 (D.N.J. Jan. 29, 2015) and stated that:

> [A] court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. Southern Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999). However, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). **To the extent that the documents relied on by the Complaint contradict the factual allegations alleged in the**

**complaint, the documents will control.** Goldenberg v. Indel, Inc. 741 F. Supp. 2d 618, 624 (D.N.J. 2010) (citing ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 n.8 (3d Cir.1994)). (emphasis added).

*See also* Great Western Mining & Mineral Co. v. ADR Options, Inc., 882 F. Supp. 2d 749 (D.N.J. 2012)  (court's consideration of documents within the scope of complaint does not convert motion to one for summary judgment).

This Court may properly consider the following documents which are referenced in and/or integral to the Kreizer Counterclaim: (i) documents relating to Kreizer's "partner" status of a professional association alleged to have been organized in March 2015 (an underlying assumption of the Counterclaim (¶¶11, 14-15)); (ii) the March 2015 "agreement" referenced throughout the Counterclaim, and (iii) the parties' spring 2019 communications referenced in the Counterclaim (¶¶33-34). Kreizer did not attach these documents to the Counterclaim and the descriptions provided are selectively incomplete and misleading, and inconsistent with both the facts and the legal conclusions asserted in the Counterclaim.

**Documents Relating to Kreizer's "Partner" Status**

The Counterclaim alleges that on March 15, 2015, "Kreizer and Shaw formed Shaw Kreizer, P.A., a partnership for the practice of law" (¶14), that "Shaw and Kreizer were partners from the outset, regardless of the shares that they respectively held" (¶20), and that "[f]rom 2015 through 2019, Shaw and Kreizer were the only two attorneys in the Firm who received partnership distributions"

(¶25).[4] However, as clearly illustrated by documents integral to this claim which Kreizer elected not to share with the Court in the Counterclaim, Kreizer was a W-9 payroll employee of a New Jersey corporation who received bonus income reported on Form **1099** in **2015**, in **2016**, in **2017**, and in **2018** -- **not by means of a K-1.** (Shaw Decl., Ex. B). Also, Judd B. Shaw P.A. was a professional corporation organized under New Jersey law on April 17, 2012 (Certificate of Incorporation, Shaw Decl., Ex. C) and Shaw Kreizer was an alternate name for Judd B. Shaw P.A. registered on January 20, 2015. (Alternate Name Registration, Shaw Decl., Ex. D).

### The March 15, 2015 "Agreement"

The so-called "partnership agreement" relied on throughout (*see*, *e.g.*, ¶¶14-18, 46), but not attached to, the Kreizer Counterclaim is actually entitled "SUMMARY OF PROPOSED TERMS FOR DAVID P. KREIZER'S ADMISSION AS A PRINCIPAL TO JUDD B. SHAW, P.A."[5] Kreizer's description of the document in the Counterclaim is inaccurate and incomplete compared to the actual document, and the following key provisions must be considered:

---

[4] The Kreizer defendants do not attach any documents supporting this claim. Documents integral to this claim are attached collectively to the Shaw Decl. as Exhibits B, C, and D.

[5] A copy is attached to the Shaw Decl. as Exhibit E.

- "The firm will be known and do business as "Shaw Kreizer, P.A." and will conduct business under the established S Corporation. (Proposed Terms at 1.)

- "On the effective start date of Year 1, JBS will grant a stock bonus to DPK representing 1% of the issued and outstanding shares of the Firm. The parties acknowledge that the fair market value of the stock grant will be based on the pro rata share of the book value of the Firm as of 12/31/14. During Year 2, final compensation for DPK will be reduced by the amount of the Firm stock bonus described above." (Proposed Terms, at 1)

- "Upon the parties [being] considered equal fity-percent (50%) partners, JBS and DPK will enter into a Shareholders Agreement within sixty (60) days … so DPK can secure 49% of the additional Shares of the Corporation." (Proposed Terms, at 3)

### The Parties' Spring 2019 Communications

The Counterclaim refers to, but does not attach, communications between Kreizer and Shaw concerning Kreizer's admission as an equity principal. (¶¶33-34). Kreizer's March 31, 2019 "memorandum"[6] makes clear, however, that the parties were negotiating their future relationship, not seeking to implement any former "agreement".

The Counterclaim's description of Kreizer's "memorandum" (¶¶ 27, 33) contradicts the claim that Kreizer considered himself a shareholder entitled to "equal compensation with Shaw" (¶27). It was entitled "Talking Points" and on its face sought to negotiate a new arrangement that would "structure" Shaw Kreizer Law with a still to be determined formula for sharing profits. (Shaw Decl., Ex. D).

The Counterclaim further alleges that Shaw responded to the "Talking Points" that "he had no intention of honoring the Contract and was not interested in a good-faith discussion." (¶34). Here, again, Kreizer does not provide the document**.**

## POINT II

### DEFENDANTS' COUNTERCLAIM SHOULD BE DISMISSED, PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6), FOR FAILURE TO STATE A CLAIM.

"A Rule 12(b)(6) motion tests the sufficiency of the factual allegations contained in the complaint." Betz v. Temple Health Sys., 659 Fed. Appx. 137, 142 (3d Cir 2016) (citing Kost v. Kozakiewicz, 1 F.3d 176. 183 (3d Cir. 1993)). Thus, initially, the court must "tak[e] note of the elements [a plaintiff] must plead to state a claim." Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).

Further, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, supra, 556 U.S. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). *See also* Phillips v. County of Allegheny, 515 F.3d 224, 234 (3rd Cir. 2008).  As this Court said in Great Western Mining,  supra, 882 F.Supp.2d at 759:

---

[6] Kreizer does not attach such document. A copy is attached to the Shaw Decl. as Exhibit F.

> The plausibility standard requires that "the plaintiff plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and demands "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 556). Ultimately, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Fowler, 578 F.3d at 211.

See Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). *See also*

Dressler v. Lime Energy, 2015 U.S. Dist. LEXIS 106532 at *7-8 (D.N.J. Aug. 13, 2015), where this Court described the process:

> First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 679. Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. Ultimately, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009).

"Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, supra, 556 U.S. at 679.  A pleading that offers only "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]' devoid of further factual enhancement" will not meet the pleading standard. Id. at 678 (internal citations omitted). The facts alleged must also be sufficient to "raise a right to relief above the speculative

level." <u>Twombly</u>, <u>supra</u>, 550 <u>U.S.</u> at 555.

      Contradictory factual assertions render the allegations of a complaint implausible. *See, e.g.,* <u>In re Riddell Concussion Reduction Litig.</u>, 77 <u>F.Supp.3d</u> 422, 437 (D.N.J. 2015) (internally inconsistent and contradictory claims are not plausible.). Consequently, for a claim to be plausible, "legal conclusions, or conclusory facts, may not contradict the detailed factual allegations of the Complaint." <u>Dorley v. S. Fayette Twp. Sch. Dist.</u>, 129 <u>F.Supp.3d</u> 220, 236 (W.D. Pa. 2015) (citing <u>Chicago Police Sgts. Assn. v. City of Chicago</u>, 2011 <u>U.S. Dist. LEXIS</u> 72424 at *19 (N.D. Ill. July 6, 2011)). In <u>Chicago Police</u>, the Court held that a plaintiff may not "plead legal conclusions or conclusory facts that are inconsistent with detailed factual allegations in the body of a complaint **or inconsistent with facts shown by supporting exhibits attached to a complaint**." <u>Id.</u> at *19 (emphasis added). Thus, inconsistences between legal conclusions and factual allegations in the Counterclaim and (as this Court noted in <u>Marrin</u>) between factual allegations in the Counterclaim and documents explicitly referenced in, or integral to the Counterclaim render the Counterclaim insufficient and implausible.

**POINT III**

**DEFENDANTS' BREACH OF CONTRACT CLAIM IS <u>INSUFFICIENT AS A MATTER OF LAW.</u>**

      The Kreizer Counterclaim fails to allege the elements of a plausible claim for breach of contract, namely the existence of a binding contract and satisfaction

of the conditions precedent to enforcement. It also raises on its face defenses that are fatal to the causes of action alleged. *See* <u>Chester v. Boston Sci. Corp.</u>, 2017 <u>U.S. Dist. LEXIS</u> 26676 at \*7-8 (D.N.J. Feb. 27, 2017), where this Court reviewed the three-step analysis applicable in the Third Circuit:

> First, the court should "outline the elements a plaintiff must plead to a state a claim for relief." Next, the court should "peel away" legal conclusions that are not entitled to the assumption of truth. Finally, the court should assume the veracity of all well-pled factual allegations, and then "determine whether they plausibly give rise to an entitlement to relief." (citations omitted)

We analyze the Kreizer Counterclaim by applying this three-part test.

**A.     Elements of, and Defenses to, Defendants' Breach of Contract Claim**

Kreizer's breach of contract claim is legally deficient for three fundamental reasons. First, it alleges the formation and existence of a "partnership" known as Shaw Kreizer P.A. and professes ignorance of the existence of Judd B. Shaw P.A., when the agreement relied on provided the "proposed terms" for the future issuance and purchase of shares in an existing corporation. In fact and as a matter of statutory law, there is no such agreement to form a partnership and Kreizer thus fails to even allege the existence of the agreement on which its claims are based.

Second, even if one charitably construes Kreizer's allegations as inartfully pleading that the term sheet created a binding agreement to issue shares in the corporation (which is not what Kreizer alleges), the breach of contract claim fails to plead satisfaction of the essential elements of a breach of contract action which,

as here, is premised on an "agreement" that has material conditions precedent (*i.e.*, the issuance and payment for the initial 1 % of the shares of the company and the execution after two years of a shareholder agreement).

Finally, even if one could construe the Proposed Terms as a binding agreement, defenses to the breach of contract claim (including abandonment, waiver, and laches) are apparent on the face of the Counterclaim when read in concert with documents referenced in or integral thereto.

### 1.    Elements of the Breach of Contract Claim

A breach of contract claim under New Jersey law is comprised of four elements: first, that the parties entered into a contract containing certain terms; second, that plaintiff did what the contract required it to do; third, that defendant did not do what the contract required it to do, and fourth, that defendant's breach, or failure to do what the contract required, caused a loss to the plaintiff[s].  Globe Motor Co. v. Igdalev, 225 N.J. 469, 482 (2016), citing Model Jury Charge (Civil), § 4.10A and Coyle v. Englander's, 199 N.J. Super. 212, 223 (App.Div.1985).

### a.  Kreizer Fails to Allege the Existence of a Contract.

The Kreizer Counterclaim fails first because Kreizer fails to plausibly plead the existence of a valid contract between the parties. The Counterclaim describes a March 15, 2015 "partnership agreement" by which Shaw Kreizer P.A. was "formed."  (*see*, *e.g.*, ¶¶1-2, 14-19).  Kreizer also refers to his resignation from

Shaw Kreizer as having triggered a "dissolution" (¶7). It is unclear what sort of entity Kreizer envisions a professional association to be, but as a matter of law it **cannot be a partnership** because it exists as a corporation.  N.J.S.A. 42:1A-10(b) ("An association formed under a statute other than this act … is not a partnership under this act.").  A professional association is a professional service corporation, created under The Professional Service Coporation Act. N.J.S.A. 14A-17-1 *et seq.* As the Proposed Terms stated, Judd B. Shaw was an existing corporation and Shaw Kreizer was a trade name.  (Proposed Terms at 1, Judd B. Shaw P.A. Certificate of Formation, Shaw Decl. Ex. C; Shaw Kreizer PA Alternate Name Registration, Shaw Decl. Ex. D).

While the parties, like many lawyers, at times referred to themselves in the document as partners and to the enterprise as a partnership, this fact did not create, and as a matter of law could not create, a partnership. In a similar fashion, Kreizer's assertion that his resignation triggered a dissolution (¶7) conflates an element of partnership law, in which a partnership is dissolved by a partner's withdrawal (N.J.S.A. 42:1A-39(a)) with the law of corporations, in which the approval of all shareholders is required to dissolve (N.J.S.A. 14A:12-3). Kreizer thus could not unilaterally force a dissolution of "Shaw Kreizer PA" as he alleges.

### b. Kreizer Alleges Only an Unenforceable Agreement to Agree.

The Proposed Terms on their face provided that Judd B. Shaw P.A. would

(i) issue stock for 1% of its shares, (ii) that Kreizer would pay for those shares through a reduction in his second year's compensation and (iii) that at the end of a two-year period, Shaw and Kreizer would execute a shareholder agreement by which Shaw would be issued another 49 percent of the shares of the corporation. None of these events are alleged to have occurred, yet all were conditions precedent to Kreizer's becoming a 50-50 shareholder of the corporation.

Examined in its entirety, the Proposed Terms was an unenforceable agreement to agree, but only after certain conditions precedent were met. See 1 Williston on Contracts §4.29 (2007), cited in Bressman v. J&J Specialized, LLC, 2013 N.J. Super. Unpub. LEXIS 2890 at *18 (App. Div. Dec. 6, 2013). The Proposed Terms lacked the specificity that would permit their enforcement. *See* Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992) ("Where the parties do not agree to one or more essential terms, however, courts generally hold that the agreement is unenforceable.").

While the price of the 1% interest issued to Kreizer was to be calculated according to book value at year-end 2014, the agreement to agree on the terms of a shareholder agreement in another two years lacks any of the myriad provisions necessary for enforcement, *e.g.*, price, payment, taxation of the stock bonus, security for any terms.  It also lacks any discussion of corporate governance issues. Kreizer himself raised these issues in his "Talking Points" memorandum, e.g.,

17

profit-sharing, corporate structure, deadlock, meetings, super-majority voting requirements. (Shaw Decl. Ex. F.) Had Kreizer timely sought to compel the issuance of shares two years ago, the terms would have been too indefinite to enforce. *See* Heim v. Shore, 56 N.J. Super. 62, 73-74 (App. Div. 1959) (alleged agreement for sale in which key terms were "still open for negotiation" was too indefinite to create an agreement).[7]

The Counterclaim fails to allege <u>any</u> conduct consistent with the binding promise alleged by Kreizer. The 1% interest was not issued, nor does Kreizer allege he paid for the shares. Kreizer does not allege he made any objection in 2015 or that he paid or attempted to pay for the shares. The March 2017 date for executing a shareholder agreement and issuing the remaining 49 percent of the firm's stock likewise came and went without complaint. Kreizer does not allege any demand, ever, for compliance with the terms of the purported agreement.

Most telling is Kreizer's own offer to negotiate in March 2019 and his admission that his own compensation -- an issue that he now claims was settled by the Proposed Terms -- was an issue for discussion. Kreizer's failure to allege any

---

[7] Other courts examining analogous agreements to enter into agreements in the future have reached similar conclusions. *See*, *e.g.*, Martin v. Martin, 327 S.W.3d 741, 749-53 (Tex. Ct. App. 2010) (agreement to execute shareholder agreement too indefinite to enforce); Bask McDonough Hotel, LLC v. American Hotel Dev. Partners, LLC, 2012 U.S. Dist. LEXIS 120566 (N.D. Ga. 2012) (agreement to convert debt to equity too indefinite to enforce even though creditor acted as principal); F.2d (agreement to agree on terms of share issuance not enforceable).

attempt to enforce the purported contract followed by his own invitation to negotiate is critical to the assessment of whether the counterclaim plausibly alleges an enforceable contract. American Cyanamid Co. v. Ellis-Foster Co., 298 F.2d 244, 247 (3d Cir. 1962) ("It is, of course, hornbook law that what the parties due under a contract is highly important in determining the meaning of the agreement which they have made.")

### c. Kreizer Fails to Allege Satisfaction of Conditions Precedent.

Kreizer's "equal partnership" was subject to three express conditions precedent: that he be issued a 1% interest, that he **pay** for the one percent interest, and that he and Shaw successfully negotiate and **execute t**he terms of a shareholder agreement. See, *e.g.*, Martin, supra, 327 S.W.2d at 754 (**execution** of subject shareholder agreement was condition precedent). None of these conditions were satisfied. Payment for the stock interest is clearly a condition precedent under New Jersey law, as was the subsequent execution of a shareholder agreement. *See* Duff v. Trenton Beverage Co., 4 N.J. 595, 604-05 (1950) (no liability on a promise subject to a condition precedent until the condition is met); City of Gloucester City v. Beazer Homes Corp., 2014 N.J. Super. Unpub. LEXIS 126 at *10 (App. Div. Jan. 23, 2014).

The Counterclaim fails to adequately plead conditions precedent as "special matter" under Fed. R. Civ. P. 9. *See* Chemtech Int'l, Inc. v. Chemical Injection

Techs., Inc., 2007 U.S. App. LEXIS 21697 at *6 (3d Cir. Sept. 10, 2007) ("A complaint that alleges a breach of contract without averring compliance with conditions precedent does not state a valid breach of contract claim."). Fed. R. Civ. P. 9(c) requires that "**in pleading conditions precedent**, it suffices to allege generally that **all** conditions precedent have occurred or been performed." (emphasis added). In selectively quoting from the March 15, 2015 "partnership agreement", the Kreizer defendants clearly failed to comply with the Rule. They only alleged in their Counterclaim that "[b]oth Shaw and Kreizer met the **metrics**" [*i.e.*, the qualifying performance standards] outlined in the "agreement" (¶16) (emphasis added), ignoring that substantive conditions precedent, which obliged Kreizer to make an initial capital contribution and execute of a shareholder agreement, had not been satisfied.[8]

Failure to perform a condition precedent may be raised in a pre-answer motion and is grounds for dismissal. *See* 2 Moore's Federal Practice – Civil §9.04[3].[9]  The Counterclaim should be dismissed on this basis alone.

---

[8] Fed. R. Civ. P. 11 prevents pleading satisfaction of conditions precedent when they have not been satisfied. *See* 2 Moore's Federal Practice – Civil §9.04[1]. *See also* Ellington Credit Fund, Ltd. V. Select Portfolio Servicing, Inc., 837 F.Supp.2d 162, 184 (S.D.N.Y. 2011).

[9] *See also*, *e.g.*, In re Evans, 51 B.R. 404, 405 (Bankr. S.D. Ohio 1985) (granting defendants' motion to dismiss plaintiff's complaint without prejudice because the contract attached to plaintiff's complaint shows that there is a condition precedent and plaintiff failed to allege in his complaint whether this condition has been met).

### 2.    Defenses to the Breach of Contract Claim

Under well-established law in the Third Circuit, a defendant may raise an affirmative defense at the motion to dismiss stage "if the defense is apparent on the face of the complaint." Ames v. Am. Radio Relay League, Inc., 716 Fed. Appx. 115 (3d Cir. 2017) (quoting Budhun v. Reading Hosp. & Med. Ctr., 765 F.3d 245, 259 (3d Cir. 2014)). *See also* Ball v. Famiglio, 726 F.3d 448, 459 n.16 (3d Cir. 2013), cert. denied, 134 S.Ct. 1547 (2014) (a number of affirmative defenses that are not listed in Fed. R. Civ. P. 12(b) can still be made by motion, provided that the basis of the defense is apparent on the face of the complaint).

 As described in Guerrero v. Bensalem Racing Ass'n, 25 F.Supp.3d 573, 581 (E.D.Pa. 2014):

> When determining whether a claim is plausible, a district court may
> also consider any affirmative defenses raised by the moving party.
> *** [T]he so-called "Third Circuit Rule" allows affirmative defenses
> to be raised in a 12(b)(6) motion.

Notably, in Ames, the Third Circuit considered whether alleged defamatory statements were true "on the face of the complaint, **which includes consideration of both the allegations in the complaint and undisputedly authentic documents referenced therein or integral to the complaint**", found that they were, and dismissed plaintiff's complaint. 716 Fed. Appx. at 119-20 (emphasis added). *See also* Cohen v. Duane, Morris & Heckscher, 1991 U.S. Dist. LEXIS 18287 at *5-7,

*9 (E.D. Pa. Dec. 13, 1991) (dismissing statute of limitations and res judicata claims on a motion to dismiss based on the allegations of the complaint).

Here, on the face of the Counterclaim and documents referenced in and/or integral to the Counterclaim, various defenses -- including abandonment, waiver, and laches -- warrant dismissal of the Kreizer defendants' breach of contract claim.

Abandonment.  By failing to act on the Proposed Terms for more than four years, the parties abandoned the proposal for issuance of shares in the corporation. County of Morris v. Fauver, 153 N.J. 80, 95 (1998) ("[t]he ability to abandon or modify one's contract has been consistently upheld in New Jersey"). Abandonment may be express or inferred from the parties acts and circumstances and will treated as abandoned when "one party acts in a manner inconsistent with the existence of the contract and the other party acquiesces in that behavior.'" Id. at 96. (quoting Dorchester Manor v. Borough of New Milford, 287 N.J. Super. 163, 170-71 (Law Div. 1994)), aff'd, 287 N.J. Super. 1154 (App. Div. 1996)) (emphasis added). Such is plainly the case here, where the positive and unequivocal actions alleged in the Counterclaim are considered with documents referenced in and/or integral to the Counterclaim, including the following:

- The Counterclaim **ignores** the requirement that Shaw issue bonus stock and Kreizer pay for the stock through a reduction in Kreizer's compensation. Compare

¶16 of the Counterclaim with the March 15, 2015 "agreement" (Shaw Decl., Ex. E).

- Kreizer never received a partnership distribution or a K-1 but instead received bonuses as consulting income from 2015 to 2018 as reflected in the 1099s he received. (Shaw Decl., Ex. B).

- Kreizer acknowledges that the parties failed to execute a shareholder agreement as required by the Proposed Terms. (¶23).

- Kreizer never, until the Counterclaim was filed, sought compliance with the agreement he now alleges.  The March 31, 2019 "Talking Points" document makes no mention of an existing contract governing the division of profits or any suggestion of a breach.

By their conduct, the parties clearly had abandoned the March 15, 2015 "agreement". Any other conclusion is simply not plausible.

**Waiver.**  Where, as here, waiver is clear on the face of the complaint, it may be determined as a matter of law. Eastman Chem. Co. v. Nestle Waters Mgmt. & Tech., 2012 U.S. Dist. LEXIS 141281 at *7 (S.D.N.Y. Sept. 28, 2012). Kreizer received substantial compensation via wages and bonus income reported on Form 099's for four years (2015-2017) ((Shaw Decl., Ex. B), earning substantial bonuses without recognizing the income taxes that would accrue on the issuance of the

partnership interest or shares, *see* 26 U.S.C. 83(a), or making the capital contribution.

By his conduct, Kreizer intentionally waived any claim that the 2015 "agreement" was enforceable as a "partnership agreement" as he now alleges. West Jersey Title & Guar. Co. v. Industrial Trust Co., 27 N.J. 144, 152 (1958). *See also* Evvco Leasing Corp. v. Ace Trucking Co., 828 F.2d 188, 195 (3d Cir. 1987) (applying New Jersey law):

> A waiver need not be asserted directly or expressly. **It is well settled that waiver may be established by conduct inconsistent with claiming the waived right or any action or failure to act evincing an intent not to claim the right.** New Jersey courts have held that **a waiver occurs when a party dispenses with the performance of something which he or she has a right to exact, or does or forbears to do something inconsistently with the right or the intention to rely on it**. (emphasis added; citations omitted)

That clearly was the case here, and the Kreizer defendants waived their breach of contract claim.

**Laches.**  "When the defense of laches is clear on the face of the complaint, and where it is clear that the plaintiff can prove no set of facts to avoid the insuperable bar, a court may consider the defense on a motion to dismiss. Kaufhold v. Caiafa, 872 F.Supp.2d 374, 380 (2012). Kreizer alleges in the Counterclaim that Shaw breached the March 15, 2015 "agreement" on several occasions, including as early as March 2015 (¶¶50-52). Yet, Kreizer did nothing to enforce the "agreement", reaping the benefits instead of his substantial, tax-driven

non-partner compensation. "The policy behind laches is to discourage stale claims." County of Morris, supra, 153 N.J. at 105. It applies where there is unexplainable and inexcusable delay in enforcing a known right resulting in prejudice to the other party. Dorcester, supra, 287 N.J. at 171. Factors to be considered include length of the delay, the reasons for the delay, and changing conditions of either or both parties during the delay. *See* Lavin v. Board of Educ., 90 N.J. 145, 151 (1982). Kreizer's four-year delay, his self-serving reasons for such delay, and the changes the parties' arrangement had undergone in these four years satisfies those criteria. Kreizer's breach of contract claim is barred by laches.

## B.    Bare Legal Conclusions

In determining whether Kreizer's breach of contract claim is plausible, all "legal conclusions", "labels", and "naked" assertions must be stripped away. The Counterclaim is comprised primarily of such discardable allegations, many of which are contradicted by factual allegations in the Counterclaim and by documents referenced in and/or integral to the Counterclaim.[10] *See*. for example, the following conclusory, legal allegations:

- "The parties' intent was clear: by the start of year 3, Shaw and Kreizer contemplated and planned for total parity." (¶19).

- "It was also clear that Shaw and Kreizer were partners from the outset, regardless of the shares they respectively held." (¶20).

---

[10] In addition, the Introduction to the Counterclaim (¶¶1-8) is all conclusory.

- "Throughout his tenure, Kreizer's role, responsibilities, and leadership confirmed his status as a partner." (¶22).

- "From 2015 through 2019, Shaw and Kreizer were the only two attorneys in the Firm who received partnership distributions." (¶25).

- "Pursuant to the Contract, Shaw promised to grant Kreizer 1% of the shares of the Firm on March 16, 2015. Shaw did not make the grant and therefore breached the Contract." (¶50; see also ¶16).[11]

---

[11] *See also*, *e.g.*:

- "Pursuant to the Contract, Kreizer was to receive an additional 49% of the equity of Shaw Kreizer no later than 60 days after March 16, 2017, provided that certain contingencies were met. When those contingencies were met, Shaw breached the Contract by failing to execute that provision." (¶51)

- "Similarly, the Contract also provided that, if certain contingencies were met, Kreizer would be entitled to compensation equal to the compensation earned by Shaw, beginning no later than 60 days after March 16, 2017. When those contingencies were met, Shaw breached the Contract by failing to execute that provision." (¶52).

- "Indeed, in violation of the Contract, Shaw paid himself hundreds of thousands of dollars more than was paid to Kreizer. In addition, Shaw reimbursed himself for expenses that were not business-related and not disclosed to Kreizer, used Firm funds to cover personal expenses, and provided himself with benefits that were neither disclosed nor available to Kreizer." (¶53).

- "By actively soliciting Kreizer's clients, including through the use of false statements and other misrepresentations, Shaw breached the provision of the Contract that Shaw will have no claim on future fees or any lien on Kreizer's litigation/personal-injury matters. (¶54).

- "Shaw committed other breaches of the Contract, including, but not limited to, failing to provide access to financial information as required by the Contract." (¶55).

26

An examination of the well-pleaded allegations of the Counterclaim reveals little in the way of actionable conduct. The Counterclaim properly alleges that Kreizer joined the existing practice, that he supervised the personal injury component of the firm's business, and that he resigned because he was unhappy with his role in the management of the firm and the conduct of his partners. What remains is less a pleading pled than a brief, in which key documents are ignored or mispresented to support the implausible assertion that Kreizer was a partner in a general partnership.

## C.   <u>Plausibility</u>

After stripping away the legal conclusions in the Counterclaim, the Court must determine whether well-pled facts alleged in the Counterclaim are sufficient to show that Kreizer has a plausible claim for relief -- a context-specific task that requires the Court to draw on its judicial experience and common sense. The analysis should incorporate two additional principles. Contradictory factual assertions render the allegations of a pleading implausible, and, equally to the point here, "[t]o the extent that the documents relied on by the Complaint contradict the factual allegations alleged in the complaint, the documents will control." <u>Marrin</u>, <u>supra</u>, 2015 <u>U.S. Dist. LEXIS</u> 10243 at *9.

The issue here is not whether Kreizer had the title of partner. Since the 1970s, non-equity partners in law firm management and ownership are

commonplace. Douglas R. Richmond, <u>The Partnership Paradigm and Law Firm Non-Equity Partners</u>, 58 Kansas L. Rev. 507, 509 (2010);[12] James D. Cotterman, <u>What Should Law Firms Do About Non-Equity Partnership</u> (published on <u>www.altmanweil.com</u>);[13] <u>D'Esposito v. Gusrae, Kaplan & Bruno PLLC</u>, 844 <u>N.Y.S.2d</u> 214, 215 (App. Div. 2007) ("Notwithstanding that plaintiff was called a partner and listed as such in Martindale-Hubbell, on the firm's letterhead and tax return, and he received distributions of net profits from the firm at a fixed rate, he was not responsible for the firm's rent or losses, was not a signatory of the partnership and/or operating agreement, made no capital investment and had no ownership interest in the firm."); <u>Barrison v. D'Amato & Lynch, LLP</u>, 2019 N.Y. Slip Op 30905(U), ¶4 (Sup. Ct. N.Y. County) (non-equity partner failed to establish equity interest).

The pleadings here do not allege a plausible claim that Kreizer was an equity partner. The Appellate Division's decision in <u>Borteck v. Torzewski</u>, 2017 <u>N.J. Super. Unpub. LEXIS</u> 2441 (App. Div. Sept. 25, 2017) is analogous, and instructive. The Court held that defendant Torzewski did not become an equity partner in Borteck & Torzewski, LLP even though he acquired a 1% capital

---

[12] Available at <u>https://papers.ssrn.com/sol3/papers.cfm?abstract_id=1586973</u>.

[13] Available at <u>http://www.altmanweil.com/dir_docs/resource/4516BBE5-7129-481F-A239-953F213B9D7D_document.pdf</u>. ("The non-equity tier is the fastest growing segment in private law firm lawyer ranks.")

interest when he joined the firm, was held out as a partner, and received a K-1 one year. Here, even had Kreizer obtained a 1% capital interest in Shaw Kreizer when he joined the Firm (*but see* discussion <u>supra</u>), that would have not made him a co-owner of the Firm. *See* <u>id.</u> at *9 ("Although [Torzewski] acquired a capital interest of one-percent in the firm when he joined, that interest did not make defendant a co-owner" and "there is no evidence he later acquired a greater ownership interest in the firm"). Kreizer's allegations are insufficient to allege an equity interest:

> It was also clear that Shaw and Kreizer were partners from the outset, regardless of the shares that they respectively held. From the beginning, the Firm held itself out as SK or "SK Law" – "S" for Shaw and "K" for Kreizer. Both Shaw and Kreizer's pictures were prominently featured on the home page of the Firm's website, and Kreizer's biography on the Firm's website touted that he was a Partner and the Chair of the Firm's Personal Injury and Litigation Groups ("PIL Group").

(¶20). *See* <u>Borteck</u>, <u>supra</u>, 2017 <u>N.J. Super. Unpub. LEXIS</u> 2441 at *9, where the Appellate Division held that even though defendant Torzewski was held out as a partner in Borteck & Torzewski, LLP, "there was no evidence defendants was held out as an equity partner to the public." <u>See</u> <u>also</u> <u>D'Esposito</u>, <u>supra</u>, 844 N.Y.S.2d at 215; <u>Barrison</u>, 2019 NY Slip Op 30905(U), ¶¶ 10-13.

It is not plausible that Kriezer's March 31, 2019 memorandum to Shaw (¶33) attempted to enforce the March 15, 2015 "agreement" rather than to negotiate the parties' future relationship. These "Talking Points" on their face sought a new arrangement that would "structure" Shaw Kreizer Law and develop a

formula for sharing profits (Shaw Decl., Ex. E).  Likewise, Kreizer's own pleading alleges that he did not have an equity partner's access to firm information (¶¶28-29) and that he sought to participate in the firm's management on an equal footing (¶33), again allegations inconsistent with an equal equity owner. Indeed, the entirety of the allegations of Count II are inconsistent with the allegations elsewhere that Kreizer acted in the role of equity owner.

It is likewise not plausible that Kreizer received partnership distributions, as alleged. (¶25). Kreizer was paid by means of a **1099** in **2015**, in **2016**, in **2017**, and in **2018** -- **not** by means of **a K-1**. (Shaw Decl., Ex. B). Contrary to the allegation in the Counterclaim, Kreizer never received distributions from the Firm as a partner.

In short, the allegations in the Counterclaim, when read in the context of documents referred to therein or integral thereto, demonstrate the implausibility of defendants' newfound breach of contract claim.

## POINT IV

### KREIZER'S BREACH OF GOOD FAITH AND FAIR DEALING CLAIM IS DUPLICATIVE OF HIS BREACH OF CONTRACT CLAIM AND SHOULD BE DISMISSED.

Kreizer alleges in the Second Count of the Counterclaim that Shaw breached the duty of good faith and fair dealing by "undermining Kreizer's role within the partnership, seeking to prevent Kreizer from receiving his 50% equity, refusing to

share information about the Firm's finances, charging personal expenses to the Firm, and rejecting an orderly dissolution of their partnership" (¶58). These claims are duplicative of defendants' breach of contract claim and should be dismissed under New Jersey law.  Kreizer seeks no injunctive relief and alleges no basis for damages arising from this conduct.

As Judge Debevoise stated in Hahn v. OnBoard LLC, 2009 U.S. Dist. LEXIS 107606 at *15 (D.N.J. Nov. 16, 2009), "[i]n both New York and New Jersey, a plaintiff cannot maintain a claim for breach of the implied covenant of good faith and fair dealing when the conduct at issue is governed by the terms of an express contract or the cause of action arises out of the same conduct underlying the alleged breach of contract." That is the case here, and Kreizer's breach of the covenant and good faith dealing Count should be dismissed as it was in Hahn:

> The resolution of Plaintiff's [covenant of good faith and fair dealing] claim is governed by the terms of an express contract and arises out of the same action underlying Plaintiff's claim for breach of contract. It follows that Plaintiff may not maintain a separate action for breach of the implied covenant of good faith and fair dealing as it would be duplicative of the breach of contract claim. Consequently, the [breach of the implied covenant of good faith and fair dealing] Count must be dismissed.

Id.  See also TBI Unlimited, LLC v. Clear Cut Lawn Decisions, LLC, 2013 U.S. Dist. LEXIS 162025 at *7 (D.N.J. Nov. 14, 2013) (dismissing breach of good faith and fair dealing claim because "[a] breach of the covenant of good faith and fair dealing must not arise out of the same conduct underlying an alleged breach of

contract action"); <u>Fields v. Thompson Printing Co.</u>, 363 <u>F.</u>3d 259, 271 (3d Cir. 2004) (holding that the implied duty of good faith and fair dealing does not operate to alter the clear terms of an agreement and may not be invoked to preclude a party from exercising its express rights under such an agreement).

<u>Hahn</u> relies on <u>Wade v. Kessler Inst.</u>, 172 <u>N.J.</u> 327 (N.J. 2002), holding it was plain error to submit both breach of contract and breach of the covenant of good faith and fair dealing interrogatories to the jury when they arose from the same conduct (<u>id.</u> at 342). *See also* <u>Glenfed Financial Corp., Commercial Finance Div. v. Penick Corp.</u>, 276 <u>N.J. Super.</u> 163, 175 (App. Div. 1994) (duty of fair dealing does not alter the terms of a written agreement"). Further, "[t]o the extent plaintiff contends that a breach of the implied covenant may arise absent an express or implied contract, that contention finds no support in our case law." <u>Wade</u>, <u>supra</u>, 172 <u>N.J.</u> at 345.

## **POINT V**

### **KREIZER'S BREACH OF FIDUCIARY DUTY CLAIM IS DUPLICATIVE OF HIS BREACH OF CONTRACT CLAIM <u>AND  SHOULD BE DISMISSED.</u>**

Kreizer  alleges in the Third Count of the Counterclaim that plaintiff Shaw breached his fiduciary duty by failing to pay Kreizer "in accordance with the parties' partnership agreement", reimbursing himself for expenses that were not business-related and not disclosed to Kreizer, using Firm funds to cover personal

expenses that were not disclosed to Kreizer and providing himself with benefits that were neither disclosed to Kreizer nor available to him, and hiring and meeting with professionals such as lawyers and consultants to explore how to remove Kreizer from the practice. (¶61). The allegations are, first, wholly conclusory and cannot support a plausible claim.  Moreover, besides assuming erroneously that Kreizer was an equity partner or co-owner of the Firm, which he was not (*see* discussion supra, Point III), Kreizer's breach of fiduciary claim is essentially duplicative of the breach of contract claim.

As in the case of a breach of the covenant of good faith and fair dealing claim, a breach of fiduciary duty claim merely duplicative of a breach of contract claim must be dismissed. *See*, *e.g.*, Atlantis Info. Tech. v. CA, Inc., 485 F.Supp.2d 224, 232 (E.D.N.Y. 2007), where, applying New York law, the Court held that:

> Even if the Court were to find that the Plaintiff adequately pleaded the existence of a fiduciary relationship, the Court nevertheless would grant the motion to dismiss because the breach of fiduciary duty claim is based upon the same allegations contained in the first count of the amended complaint to recover damages for breach of contract. Specifically, the Plaintiff alleges that the Defendant breached its fiduciary duty by failing to pay Royalties and failing to provide accurate Reports, the same claims raised in support of the Plaintiff's breach of contract claim. "A cause of action for breach of fiduciary duty which is merely duplicative of a breach of contract claim cannot stand." (citations omitted).

Analogously, in Napoleon v. Colicchio, 2013 N.J. Super. Unpub. LEXIS 2227 (Law Div. September 6, 2013), the Court dismissed certain counts (including a

breach of fiduciary duty count) of plaintiff's complaint in what was essentially a legal malpractice action because, among other things, they are "duplicative of plaintiff's malpractice claims and are subsumed into those claims" as they "arise from the same duty, same conduct and allege the same damages." Id. at 35.

## POINT VI

### KREIZER'S TORTIOUS INTERFERENCE CLAIM IS INSUFFICIENT AS A MATTER OF LAW.

Kreizer's tortious interference claim (Fourth Count of the Counterclaim) should be barred because it is "nothing more than a 'dress up' of its contract claim". Custom Communications Engineering, Inc. v. E.F. Johnson Co., 269 N.J. Super. 532, 541 (App. Div. 1993) (dismissing tortious interference claim on this ground).

The conclusory claim that Shaw made "defamatory" statements regarding Kreizer (¶6) in communications that "contained false and misleading information about Kreizer" (see, e.g., ¶63, 64) is an attempt to disguise a defamation claim as tortious interference. A party cannot under New Jersey law avoid the strict requirements applicable to claims for defamation by styling a claim as a claim for tortious interference. Thus, in Lobiondo v. Schwartz, 323 N.J. Super. 391, 417, certif. denied, 162 N.J. 488 (1999), the Appellate Division held that:

> It would obviously be intolerably anomalous and illogical for conduct
> that is held not to constitute actionable defamation nevertheless to be
> relied on to sustain a different cause of action based solely on the

consequences of that alleged defamation. Thus, since there was no actionable defamation here, there can be no claim for damages flowing from the alleged defamation but attributed to a different intentional tort whose gravamen is the same as that of the defamation claim.

*See also* Bainhauer v. Manoukian, 215 N.J. Super. 9, 48 (App. Div. 1987) (proof of defamation would "completely comprehend" malicious interference cause of action). Here, defendants did not allege defamation, presumably cognizant of the burdens they would have to overcome with respect, among other things, to pleading, privilege, damage, and other strict requirements applicable to libel claims under New Jersey law.

Finally, contrary to Paragraph 66 of the Counterclaim, an alleged RPC violation, even if not spurious (as here), would not give rise to a cause of action for tortious interference. *See, e.g.,* Baxt v. Liloia, 155 N.J. 190, 202-04 (1998):

> [S]tate disciplinary codes are not designed to establish standards for civil liability but, rather, to provide standards of professional conduct by which lawyers may be disciplined. *** The disciplinary rules serve purposes that are substantially different from those of an individual litigant in a civil action. *** We reject plaintiffs' contention that a cause of action based on a violation of the RPCs is necessary to ensure that attorneys conform their conduct to the high standards set forth in the Rules.

*See also* id. at 197-98. Kreizer's misuse of the disciplinary rules in this proceeding as "a procedural weapon" should not be sanctioned by this Court.

## POINT VII

## KREIZER'S UNFAIR COMPETITION CLAIM IS INSUFFICIENT AS A MATTER OF LAW.

Kreizer alleges in the Fifth Count of the Counterclaim, without more, that Shaw's conduct "constitutes unfair competition." (¶69). This allegation is fatally deficient.

In New Jersey, unfair competition is not an independent cause of action except in circumstances inapplicable here. *See* Nat'l Auto Div., LLC v. Collector's Alliance, Inc., 2017 N.J. Super. Unpub. LEXIS 234 at *11 (App. Div. January 31, 2017):

> **Outside of the intellectual property context, unfair competition is not an independent cause of action.** See, e.g. Columbia Broad. Sys. v. Melody Recordings, Inc., 134 N.J. Super. 368, 341 A.2d 348 (App. Div. 1975) (explaining the boundaries of imitating a competitor in the context of unfair competition). (emphasis added).

## POINT VIII

## KREIZER'S EQUITY INTEREST CLAIM IS SUBSUMED BY THEIR BREACH OF CONTRACT CLAIM AND SHOULD BE DISMISSED.

Kreizer alleges in the Sixth Count of the Counterclaim that "[i]n accordance with the contract between Shaw and Kreizer, Kreizer was an equal owner of Shaw Kreizer" and that "[i]n accordance with the party's contract, upon Kreizer's disassociation from the Firm, the Firm is required to purchase Kreizer's equity interest for the fair value as of the date of withdrawal." (¶¶71-72).

Aside from being legally insufficient (*see* discussion <u>supra</u>, Point III), this claim is subsumed by defendants' breach of contract claim, and should be dismissed. *See*, *e.g.*, <u>Page v. Muze, Inc.</u>, 270 <u>A.D.2d</u> 401, 402 (2d Dep't 2000) (claims based on failure to issue equity all subsumed in breach of contract claim).

## POINT IX

### KREIZER'S CHARGING LIEN CLAIM IS INSUFFICIENT AS A MATTER OF LAW.

Kreizer alleges in the Seventh Count of the Counterclaim that "**[b]ecause Kreizer was an owner of Shaw Kreizer**, he is entitled to share in all of the fees that will be generated from personal injury and PIP files that were opened at Shaw Kreizer **while Kreizer was an owner**" and that "Kriezer is entitled to a lien on the fees generated by all files opened at Shaw Kreizer **at the time that he was an owner**." (¶75) (emphasis added).  Kreizer fails to identify any basis, however, for the assertion of a charging lien.  Courts recognize contingency fees as an asset of a dissolved **partnership** under the unfinished business doctrine, *see* <u>Horner v. Bagnell</u>, 154 <u>A.3d</u> 975, 988 (Conn. 2017).  No authority exists for the proposition that an individual who withdraws as a principal from a corporation has a lien against the assets of the corporation.  <u>See</u> <u>In re Hijacking of Pan Am</u>, 698 <u>F. Supp.</u> 479, 482 (S.D.N.Y. 1988) (discharging liens asserted by former shareholder).

# POINT X

## KREIZER'S ACCOUNTING CLAIM IS SUBSUMED BY HIS BREACH OF CONTRACT CLAIM AND  SHOULD BE DISMISSED.

Kreizer alleges in the Eighth Count of the Counterclaim that he is "entitled to an accounting of the assets, liabilities, and finances of Shaw Kreizer". (¶¶77-80). An accounting is a remedy, not an independent cause of action in New Jersey; it is derivative of the Kreizer defendants' purported breach of contract claim. *See* Custom Communications, supra, 269 N.J. Super. at 541 (demand for an accounting is a component of economic damage claim inextricably related to claimed breach of contract). [14]

---

[14] *See also* Jackson v. N'Genuity Enters., 2010 U.S. Dist. LEXIS 78134 at *20 n.8 (N.D. Ill. Aug. 2, 2010) (demand for accounting is a remedy, not a cause of action); Arango v. ReconTrust Co., N.A., 2010 U.S. Dist. LEXIS 58314 at *16 (S.D. Cal. June 14, 2010) ("[p]laintiff's right to an accounting is derivative in nature, such that  it must be based on a viable claim").

## <u>CONCLUSION</u>

For the foregoing reasons, plaintiffs Judd Shaw, P.A. and Judd B. Shaw, Esq. request that the Counterclaim filed by defendants David P. Kreizer, Esq. and David P. Kreizer, LLC be dismissed in its entirety.

Respectfully submitted,

Jay R. McDaniel, Esq.
**WEINER LAW GROUP LLP**
Attorneys for Plaintiffs


By:   /s/ Jay R. McDaniel, Esq.
        Jay R. McDaniel, Esq.
        A Member of the Firm

Dated: July 8, 2019

1646535_1

39